T.C. Summary Opinion 2007-45


UNITED STATES TAX COURT


STEVEN RUDOLPH KALDI, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5591-06S.                    Filed March 21, 2007.


Steven Rudolph Kaldi, pro se.

Derek W. Kaczmarek, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

     [1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2002, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner Steven Rudolph Kaldi filed a petition with this Court in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for 2002. Pursuant to section 6330(d), petitioner seeks review of respondent's determination.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioner resided in Las Vegas, Nevada.

Petitioner, an insurance agent, filed his Form 1040, U.S. Individual Income Tax Return, for the taxable year 2002 on July 14, 2004, showing an underpayment of income tax.[2] The source of the underpayment was a $45,000 distribution from a qualified retirement account.[3] He included the $45,000 in his gross income for 2002 and reported the corresponding additional early withdrawal tax of $4,500 under section 72(t).

Petitioner gave $20,000 of the distribution to his daughter, and put the remaining $25,000 into an investment account managed

---

[2] Petitioner had the return prepared by an accountant who had been preparing his taxes since 1980.

[3] Petitioner received a distribution of $117,552 from a qualified retirement account and properly rolled over all but $45,000 of that amount into another qualified retirement account. Petitioner was 57 years of age at the time of the distribution.

by Vestin Mortgage.[4]  The account was a "transfer on death" account with a listed beneficiary.

On August 16, 2004, respondent assessed the underpayment from petitioner's 2002 tax return, as well as additions to tax for late filing and late payment, and statutory interest.

On September 17, 2005, respondent issued to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to petitioner's Federal income tax liability for the taxable year 2002.  Petitioner timely requested an administrative appeals hearing.

Respondent mailed to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 dated March 7, 2006, determining that he was liable for both the regular tax and the additional early withdrawal tax on the $45,000, as well as the additions to tax and interest previously assessed.  Petitioner timely filed a petition with this Court.

At trial, petitioner conceded that $20,000 of his Individual Retirement Account (IRA) distribution was properly includable in his income and subject to the additional 10-percent tax imposed by section 72(t).  He maintained, however, that $25,000 of the

---

[4]  Petitioner heard about Vestin Mortgage from a friend who recommended the investment company because "they are on TV all the time."  According to petitioner's testimony, it was only after he gave Vestin Mortgage his money that he discovered the company was under investigation by the Securities and Exchange Commission.

$45,000 should not have been included as gross income, despite its inclusion on his return, and he disputed the assessment of the additions to tax on the basis of reasonable cause.

## Discussion

### A. Section 6330

Section 6330 provides that no levy may be made on any property or right to property of a person unless the Secretary first notifies him or her in writing of the right to a hearing before the Appeals Office. The Appeals officer must verify at the hearing that the applicable laws and administrative procedures have been followed. Sec. 6330(c)(1). At the hearing, the person requesting a hearing may raise any relevant issues relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and collection alternatives. Sec. 6330(c)(2)(A). The person may challenge the existence or amount of the underlying tax if he or she did not receive any statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B).

As the underlying tax liability is properly at issue in this case, we decide the issue de novo. See Montgomery v. Commissioner, 122 T.C. 1 (2004); Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000).

Comparable to a refund suit, petitioner bears the burden of proving the error in his self-assessment. See, e.g., Brown v. United States, 890 F.2d 1329, 1334 (5th Cir. 1989). Petitioner has not met his burden, and consequently we must side with respondent.

B. Distributions From Individual Retirement Accounts

Generally, a distribution from an IRA is includable in the distributee's gross income in the year of distribution under the provisions of section 72. Secs. 61(a)(11), 408(d)(1), 4974(c); Arnold v. Commissioner, 111 T.C. 250, 253 (1998). Distributions made prior to a taxpayer's attaining the age of 59½ that are includable in income are generally subject to a 10-percent additional early withdrawal tax unless an exception to the tax applies.[5] Sec. 72(t)(1). In this case, no exception is available to petitioner.

1. Disability Exception

Section 72(t)(2)(A)(iii) exempts distributions "attributable to the * * * [distributee's] being disabled". At trial, petitioner argued that he was disabled, and he testified that he suffers from "temporal lobe spiking" resulting from a head injury sustained during military service in 1965. He testified that the

---

[5] The sec. 72(t) additional tax is intended to discourage premature distributions from retirement plans. Dwyer v. Commissioner, 106 T.C. 337, 340 (1996); see also S. Rept. 93-383, at 134 (1973), 1974-3 C.B. (Supp.) 80, 213.

temporal lobe spiking causes "severe anxiety and panic attacks" and prevented him from working for several years. As proof of this disability, he offered a copy of his card from the Veterans' Administration showing that he is a "service-connected, disabled veteran receiving medical benefits".

While we do not doubt petitioner's ongoing mental health issues, from the testimony and evidence presented at trial, these issues do not rise to the level of "disability" as contemplated by the Internal Revenue Code for relief from the additional tax imposed by section 72(t). "Disabled", as defined in section 72(m)(7), means:

> [being] unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.

See also sec. 1.72-17A(f)(3), Income Tax Regs.

Petitioner testified at trial that he was better and had previously been able to regain control of his affairs; thus, his disability was clearly not of long-continued duration. See sec. 72(m)(7). He also testified that he had begun a professional comeback and was "recovering from" his disability. Accordingly, the Court remains unconvinced that petitioner's disability warrants inclusion under the exception to section 72(t). See sec. 1.72-17A(f)(2) and (4), Income Tax Regs.

Further, "an individual shall not be considered to be disabled unless he furnishes proof of the existence" of his disability.  Sec. 72(m)(7).  Petitioner offered a medical benefits card issued by the Veterans' Administration and some brief testimony, neither of which rises to a level sufficient to meet the standard required by the Internal Revenue Code.  See sec. 72(m)(7); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioner also claimed "this Tax Court has previously ruled on my late filings and accepted my disability."  But the issue of petitioner's disability has never been litigated and decided by this Court; rather, in petitioner's prior proceeding at docket No. 1093-04S (regarding taxable year 1999), the Court merely entered a decision pursuant to the stipulation of the parties. See United States v. Intl. Bldg. Co., 345 U.S. 502, 505 (1953) (only judgments on matters actually litigated between the parties are conclusive in another action); Peck v. Commissioner, 90 T.C. 162, 166-167 (1988) (discussing the requirements for collateral estoppel), affd. 904 F.2d 525 (9th Cir. 1990); Hart Metal Prods. Corp. v. Commissioner, T.C. Memo. 1969-164 (holding that the doctrine of collateral estoppel does not apply when a decision of the Court constitutes only a pro forma acceptance of the parties' agreement), affd. 437 F.2d 946 (7th Cir. 1971).

Without more persuasive documentation to support petitioner's claim of disability, and without evidence that the

disability meets the standard set forth in section 72(m)(7) and section 1.72-17A(f)(2) and (4), Income Tax Regs., we find that no portion of the $45,000 distributed to petitioner would be exempted from the additional early withdrawal tax on the basis of the disability exception.

2. Rollovers

Petitioner argues that $25,000 of the $45,000 was rolled over into another IRA and should be exempt from both inclusion in his gross income for 2002 and from the additional early withdrawal tax. "Rollover contributions" are not includable in gross income. Sec. 408(d)(3); Lemishow v. Commissioner, 110 T.C. 110, 112 (1998), supplemented 110 T.C. 346 (1998). Further, rollover contributions are not subject to the additional early withdrawal tax. Sec. 408(d)(3).

To qualify as a rollover contribution, a payment or distribution from an individual retirement plan must be rolled over into another IRA or other qualified plan within 60 days of the payment or distribution. Sec. 408(d)(3); Schoof v. Commissioner, 110 T.C. 1, 7 (1998); Metcalf v. Commissioner, T.C. Memo. 2002-123, affd. 62 Fed. Appx. 811 (9th Cir. 2003); sec. 1.408-4(b)(1) and (2), Income Tax Regs. "A fundamental requirement for a rollover contribution under section 408(d)(3) * * * is that funds actually be rolled over or transferred into an IRA or other qualified plan." Crow v. Commissioner, T.C. Memo.

2002-178. The $25,000 in question here was not rolled over into an IRA or other qualified plan. Instead, that portion of the distribution was placed into a regular investment account and is thus not exempt from the additional early withdrawal tax or inclusion in petitioner's 2002 gross income.

Although Vestin Mortgage does offer qualified IRAs, in order to make a rollover contribution, the person opening such an account would have to utilize the services of a custodian to make a valid transfer of funds. Petitioner did not employ the use of a custodian when opening his account.

In addition, the documents petitioner filled out to open his account with Vestin Mortgage indicated that he was interested in a "transfer-on-death" account, an individual account. According to Vestin Mortgage's representative, a beneficiary designation for an IRA would have been filled out with a completely different form, thus providing circumstantial evidence of petitioner's intent.

Petitioner argues that his intent was to open an IRA and not an individual account, and he should not be penalized for the mistake. It is not unheard of that mistakes, such as clerical or bookkeeping errors, made on the opening of a new account have later come to light, rendering the rollover defective in some way. In some rare instances, courts have been willing to recharacterize an imperfect transaction as a rollover

contribution when there has been substantial compliance with--
and the fulfillment of--the remaining requirements of the
statute. See, e.g., <u>Wood v. Commissioner</u>, 93 T.C. 114 (1989)
(IRA trustee's error did not preclude rollover treatment because
taxpayer had substantially complied with statutory requirements).
But such treatment is not common, and the facts here do not
warrant or support a recharacterization. See <u>Schoof v.
Commissioner</u>, <u>supra</u> (nonqualification of IRA trustee was
fundamental defect requiring inclusion of failed rollover into
gross income); <u>Crow v. Commissioner</u>, <u>supra</u> (bank's
mischaracterization of transaction combined with timing error was
fatal to taxpayer's argument that the funds should be treated as
a rollover).

In the instant case, petitioner has not demonstrated that he
substantially complied with the rollover provisions outlined in
the statute, nor has he provided us with persuasive evidence in
support of his claim that his intent was to open an IRA, rather
than a regular investment account, with Vestin Mortgage.

Accordingly, the Court finds that petitioner did not roll
over the $25,000 into another qualified retirement plan, and the
amount is subject to the section 72(t) additional tax.

C. <u>Additions to Tax</u>

Respondent bears the burden of production with respect to
the additions to tax. See sec. 7491(c); see also, e.g., <u>Swain v.</u>

Commissioner, 118 T.C. 358, 363 (2002); Higbee v. Commissioner, 116 T.C. 438 (2001).  Respondent has met his burden.

    1.  Late Filing

    Section 6651(a)(1) imposes an addition to tax for failure to file a return by its due date.  The addition equals 5 percent for each month or fraction thereof that the return is late, not to exceed 25 percent.  Sec. 6651(a)(1).

    In the absence of an extension, the last date for petitioner to file his Federal income tax return for taxable year 2002 was April 15, 2003.  Secs. 6072(b), 7503.  Petitioner's 2002 return was not filed, however, until July 14, 2004.

    "A failure to file a tax return on the date prescribed leads to a mandatory penalty unless the taxpayer shows that such failure was due to reasonable cause and not due to willful neglect."  McMahan v. Commissioner, 114 F.3d 366, 368 (2d Cir. 1997), affg. T.C. Memo. 1995-547.  A showing of reasonable cause requires taxpayers to demonstrate they exercised "ordinary business care and prudence" but were nevertheless unable to file the return within the prescribed time.  United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner contends that he had reasonable cause for filing late, and that the late filing of his return is attributable to his disability.[6]

A taxpayer may have reasonable cause for failure to timely file a return where the taxpayer or a member of the taxpayer's family experiences an illness or incapacity that prevents the taxpayer from filing his or her return.  See, e.g., United States v. Sanford, 979 F.2d 1511 (11th Cir. 1992) (holding that reasonable cause may be found if a taxpayer convincingly demonstrates that a disability beyond his control rendered him unable to exercise ordinary business care).  The type of disability required is "one that because of severity or timing makes it virtually impossible for the taxpayer to comply--things like emergency hospitalization or other incapacity occurring around tax time."  Carlson v. United States, 126 F.3d 915, 923 (7th Cir. 1997).

---

[6]  Petitioner argued in his posttrial brief that he had been "awarded by this court late filing status under docket 1093-04S." As noted above, see Disability Exception, supra, the previous case to which petitioner was a party resulted in the Court's entering a stipulated decision based on an agreement reached by the parties; none of the issues were actually litigated.  Any waiver of additions to tax on the basis of petitioner's late-filing a return for the taxable year 1999 agreed to by the IRS in that case was at the IRS's sole discretion and has no bearing on the instant case.  Petitioner should note that this Court has no authority to permanently grant a taxpayer permission to file his or her tax returns in an untimely fashion, and that extensions of time to file may be obtained from the IRS.

While we recognize petitioner's mental health difficulties had some impact on his day-to-day life, petitioner employed the same accountant for more than 20 years. In fact, he testified that his practice was to put all his papers into an envelope and deliver the envelope to his accountant who then prepared his returns. Petitioner did not explain how his disability prevented him from doing this for the taxable year in issue or how his disability was so incapacitating as to prevent the exercise of ordinary business care.

On the basis of the record before us, we therefore conclude that petitioner did not demonstrate that his failure to timely file a return was because of reasonable cause and not willful neglect. See sec. 301.6651-1(c), Proced. & Admin. Regs. Accordingly, petitioner is liable for the addition to tax under section 6651(a)(1) for 2002.

2. Late Payment

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as tax on the return on or before the date prescribed for payment of that tax, unless the failure was because of reasonable cause and not willful neglect. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioner may demonstrate reasonable cause for late payment by showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable

to pay the tax or would suffer an undue hardship if he paid on the due date.  Sec. 301.6651-1(c), Proced. & Admin. Regs.  "Undue hardship" means more than mere inconvenience to the taxpayer. See sec. 1.6161-1(b), Income Tax Regs.

Petitioner mailed in $5,000 of the almost $14,000 due at the same time he late-filed his 2002 Federal income tax return on July 14, 2004.  He argues that he had reasonable cause for not paying the full amount of tax due in a timely manner.  The principal thrust of his argument seems to be that he regretted following his accountant's advice to report the $25,000 given to Vestin Mortgage as an early withdrawal from an IRA, and he believed he was showing "good faith" by sending in any money at all until he had the opportunity to dispute the sum's inclusion. He argued that he thought settling the matter would take only a "reasonable period of time, 90 days, six months".  Petitioner did not, however, argue any set of facts or circumstances that would lead the Court to find that he exercised ordinary business care and prudence in providing for the timely payment of his self-reported tax liability or that he would have suffered undue hardship if he had paid the tax in full on its actual due date, April 15, 2003.  See secs. 6072(a), 6151(a), 7503; sec. 301.6651-1(c), Proced. & Admin. Regs.

Consequently, petitioner is liable for an addition to tax under section 6651(a)(2).

D.  Conclusion

To the extent petitioner has made other arguments, the Court concludes such arguments are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues,

Decision will be entered

for respondent.